UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA E. LOPERA,<br><br>   Plaintiff,<br><br>v.<br><br>COMPASS GROUP USA, INC., MORRISON MANAGEMENT SPECIALISTS, INC., FLIK INTERNATIONAL CORP., and MARIE MONTFLEURY, *individually*,<br><br>   Defendants. | C.A. No. 1:20-cv-10355-NMG<br><br>**LEAVE TO FILE GRANTED<br>ON MARCH 4, 2021** |

**AMENDED COMPLAINT**

**INTRODUCTION**

1.    The Plaintiff, Laura E. Lopera ("Ms. Lopera" or "Plaintiff"), worked for the Defendant, the food-services company, Compass Group USA, Inc. ("Compass" or "the Company"), for nearly a decade. During this time, Ms. Lopera was promoted three times and was selected for management training. Ms. Lopera diligently completed the training and thereafter was hired by Defendant Morrison Management Specialists, d/b/a Morrison Healthcare ("Morrison"), a wholly owned subsidiary of Compass, to work in the kitchen at Boston Medical Center. Ms. Lopera was one of very few Latinx employees working in the kitchen. Although Ms. Lopera was hired as a manager, she soon discovered that Defendants had inexplicably downgraded her to a "manager's assistant." Ms. Lopera was required to report to a peer, Defendant Marie Montfleury ("Ms. Montfleury"), and was required to work very long hours. When Ms. Lopera's supervisor, Ms. Montfleury, learned that Ms. Lopera is a lesbian, Ms.

1

Lopera's work situation worsened. Despite following Company procedures and her manager's instructions, Ms. Lopera was disciplined for incidents beyond her control and/or for complaints that she brought concerning troubling conditions in the kitchen. Ultimately, in disregard of the Company's progressive discipline policies, Defendants unlawfully terminated Ms. Lopera's employment.

## PARTIES

2. Plaintiff Laura E. Lopera is a natural person who resides in Chelsea, Massachusetts.

3. Defendant Compass Group USA, Inc. is a foreign corporation organized under the laws of Delaware with a business address of 2400 Yorkmont Road, Charlotte, North Carolina.

4. Defendant Morrison Management Specialists, Inc., d/b/a Morrison Healthcare, is a foreign corporation organized under the laws of Georgia with a business address of 400 Northridge Road, Suite 600, Sandy Springs, Georgia.

5. Defendant Flik International Corp. ("Flik") is a foreign corporation organized under the laws of New York with a business address of 3 International Drive, Suite 200, Rye Brook, New York.

6. Defendant Marie Montfleury is a natural person who, on information and belief, resides in Massachusetts. At all times relevant to this Complaint, Ms. Montfleury was a "Patient Service Manager," employed by Morrison (and therefore Compass) at Boston Medical Center in Boston, Massachusetts.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action, pursuant to G.L. c. 151B, § 9.

8. Venue properly lies in this district, pursuant to G.L. c. 151B, § 9, as the discrimination at issue in this Complaint took place here.

## FACTUAL BACKGROUND

9. Compass is a food-services company with various divisions, including, without limitation, Morrison, that operate throughout the United States. The Company's divisions operate in a wide variety of settings, including restaurants, hospitals, and institutes of higher education.

10. Morrison and Flik are wholly owned subsidiaries of Compass.

11. Plaintiff is a Latina woman who was born in Colombia.

12. Plaintiff is also a lesbian.

13. Flik/Compass first hired Ms. Lopera in or about 2009.

14. At all times during Ms. Lopera's employment with Flik, Compass controlled various aspects of Plaintiff's employment.

15. Without limitation, Ms. Lopera was subject to Compass policies and procedures, Compass-provided job training and human resources oversight, and was issued forms W-2 that identified Compass.

16. Further, according to Compass, both Flik and Morrison were Plaintiff's employers at various times relevant to this action.

17. At all relevant times, Ms. Lopera performed her job duties diligently. She was a reliable, dedicated employee and an asset to Compass .

18. Over the eight-plus years following her hire, Compass/Flik promoted Ms. Lopera no fewer than three times.

*Management Training*

19. In 2017, in recognition of her talent and dedication, Compass offered Ms. Lopera the opportunity to attend management training. Ms. Lopera was excited about the opportunity. She loved her job, and she valued Compass as an organization and an employer.

20. Ms. Lopera traveled to North Carolina to attend the seminars, and in December 2017, she graduated from Compass's management training program.

21. Ms. Lopera was eager to pursue her next opportunity within Compass and to grow professionally.

22. In or about March 2018, Ms. Lopera interviewed for the position of "Patient Service Manager" for Morrison, a subsidiary of Compass, at the Boston Medical Center ("the BMC").

23. The BMC is among the most prominent hospitals in the Boston area and, among other distinctions, is the largest Level I trauma center in New England.

24. Morrison/Compass offered Ms. Lopera the position of "Patient Service Manager," which she accepted.

25. Prior to her transfer to Morrison, Ms. Lopera had accrued substantial paid time off ("PTO") while working for Flik.

26. On information and belief, Compass and Flik neither transferred the entirety of Ms. Lopera's earned PTO to her when she moved Morrison nor compensated her for it.

27. Ms. Lopera began her new job on or about April 9, 2018.

28. Thereafter, until the termination of Ms. Lopera's employment, Ms. Lopera continued to be subject to Compass policies and procedures, Compass-provided job training, and Compass payroll practices.

29. Ms. Lopera was to be one of three managers working at the BMC, reporting to Katrina Parson ("Ms. Parson").

*Adverse Treatment Begins*

30. Shortly after beginning her new job, Ms. Lopera found that she was listed on the internal directory not as a "Patient Service Manager" but as a "Patient Service Manager's *Assistant*."

31. Moreover, Ms. Lopera was not assigned to report to Ms. Parson, as had been represented, but instead to another manager of the same level as herself, the Defendant, Ms. Montfleury.

32. Ms. Lopera, who was born in Colombia, was the sole Latinx person in a management position, and one of just two Latinx employees on site.

33. For so few Latinx employees to work at Morrison's BMC location is highly unusual among food-services establishments in the Boston area.

34. Notably, the other Latinx employee on site did not even work for Morrison.

35. The Morrison staff at the BMC, including Ms. Montfleury, are for the most part of Haitian origin and/or ancestry.

36. Ms. Lopera quickly found that she was treated adversely as compared to Ms. Montfleury and even as compared to the second so-called "Patient Service Manager's Assistant," Marlon Fitzpatrick ("Mr. Fitzpatrick"), who is also Haitian.

37. At times, Ms. Lopera was scheduled for back-to-back weekend shifts amounting to 14- to 16-hour days, a punishing schedule to which neither Mr. Fitzpatrick nor Ms. Montfleury was subjected.

38. On information and belief, Ms. Montfleury was rarely, if ever, required to work weekends.

39. Ms. Lopera was denied access to her accrued vacation time and to pay stubs, in clear violation of Massachusetts law.

40. Ms. Lopera was required to wear a uniform.

41. Neither Ms. Montfleury nor Mr. Fitzpatrick, the latter of whom began his job on the same day as Ms. Lopera began hers, was required to wear a uniform.

42. Mr. Fitzpatrick was substantially less qualified than Ms. Lopera.

43. On information and belief, Mr. Fitzpatrick's previous job had been as a cook (not even as a chef), and he did not have management training.

44. Ms. Montfleury frequently berated, and even yelled at, Ms. Lopera for her job performance, while Ms. Montfleury herself often did little work in the kitchen.

45. Ms. Lopera was expected to engage in food preparation on a regular basis, which was outside of her job description and which Ms. Montfleury did not regularly do.

46. At various times, Ms. Montfleury made statements that were homophobic, including remarking in a disparaging manner that one person or another seemed to be gay.

47. That Ms. Lopera is a lesbian came to Ms. Montfleury's attention when a party was being held for a colleague who was leaving.

48. Ms. Montfleury said that she planned to bring her children and (male) significant other to the party, to which Ms. Lopera responded that she might bring her (female) partner as well.

49. Ms. Montfleury instructed her not to.

50. Ms. Montfleury's hostility toward Ms. Lopera increased after she learned Ms. Lopera's sexual orientation.

*Food-Safety Violations*

51. While working in the BMC kitchen, Ms. Lopera observed ongoing deficiencies in food-safety conditions there, including, without limitation, problems with respect to sanitation, potential cross-contamination, and meeting patients' medical needs.

52. These concerns were serious, particularly because employees were preparing food for, among others, patients at the BMC.

53. Conditions in the freezer were often unsanitary and included, without limitation, stacking of open boxes or containers on top of each other, which can cause cross-contamination.

54. Kitchen employees at the BMC were, in many instances, untrained or undertrained, including with respect to food safety and patients' dietary restrictions.

55. In some instances, staff who were tasked with food preparation had not received sufficient (or perhaps even any) training in food allergies, cross-contamination, safe storage of food, and/or dietary restrictions.

56. Conditions in the kitchen were, in many instances, unclean.

57. For example, on or about June 6, 2018, Ms. Lopera observed that surfaces in the kitchen were unclean and that food had been left outside without being refrigerated.

58. Ms. Lopera also discovered that the cook was not trained for a dinner service, and without limitation, was unaware of both dietary restrictions for certain patients and how to meet their needs.

59. Ms. Lopera observed that Ms. Montfleury ordered Morrison employees to sign paperwork indicating that they had received training that, in fact, they had not received.

60. Surfaces in the kitchen were often not sanitized on a daily basis, which created unsafe food conditions by, without limitation, increasing the likelihood of both cross-contamination and the spread of pathogens.

61. Workers failed to change the water underneath the food containers in hot-food lines for prolonged periods, which was unsanitary.

62. Ms. Lopera made various efforts to address these deficiencies.

63. At various times, Ms. Lopera reported these conditions to Ms. Montfleury, who represented that she would address the issues.

64. On information and belief, Ms. Montfleury took no meaningful action.

65. The situation did not improve.

66. Ms. Lopera attempted to bring her concerns about food safety at the BMC kitchen to Compass's higher management, again, to no avail.

67. On information and belief, Compass/Morrison did not take Ms. Lopera, or her concerns, seriously.

68. On information and belief, Compass/Morrison did not conduct any reasonable investigation into Ms. Lopera's concerns about food safety, nor did Compass take any remedial steps to correct food safety violations in the BMC kitchen.

69. Instead, Ms. Lopera was met with backlash.

*Retaliation*

70. On Saturday, July 28 and Sunday, July 29, 2018, Ms. Lopera worked from approximately 5:30 a.m. to 7 p.m., for a total of 26 hours over a 48-hour period.

71. The kitchen was particularly short-staffed that weekend, in part because too few employees were scheduled and in part because employees called out.

72. On Saturday, Ms. Lopera's team was four employees short and she had to perform some duties for the absent staff.

73. In one such instance, after returning from delivering food to Pediatrics, Ms. Lopera was told by employees in the kitchen that a temporary employee had spoken in an inappropriate manner toward other employees in the work area.

74. Ms. Montfleury had previously told Ms. Lopera that she would handle issues with the temporary-staffing agency herself, and had instructed Ms. Lopera to leave that task to her.

75. Thus, Ms. Lopera lacked the authority to address the situation directly with the worker; however, since bullying in the workplace violated Company policy, Ms. Lopera acted as instructed by Ms. Montfleury and told the temporary employee not to come in the following day.

76. It was Ms. Lopera's expectation, per Ms. Montfleury's instructions, that Ms. Montfleury would address the situation as she saw fit on Monday.

77. Monday, July 30, 2018 was Ms. Lopera's day off.

78. When Ms. Lopera returned to work on Tuesday, July 31, 2018, she began to experience symptoms of vertigo and, as a result, was constrained to leave work to visit her physician.

79. When Ms. Lopera notified management that she was leaving work, they expressed disbelief and accused her of lying about her condition.

80. Ms. Lopera's physician attributed the vertigo to exhaustion from overwork and advised Ms. Lopera to stay out of work for one week.

81. Ms. Lopera provided the Company with a letter from her physician in support of her request for a brief medical leave.

82. While she was on medical leave, Ms. Lopera attempted to engage Human Resources concerning Ms. Montfleury's inappropriate behavior toward her and concerning the short staffing and unsafe handling of food in the BMC kitchen.

83. On August 6, 2018, Ms. Lopera returned to work.

84. Upon her return, Ms. Lopera immediately received her first performance warning in her entire Compass career, for alleged neglect of job duties "where gross neglect was not involved."

85. The warning accused Ms. Lopera of two infractions.

86. First, the warning alleged that Ms. Lopera had allowed the belligerent temporary employee to behave inappropriately, and had failed to speak with that individual about the issue.

87. This was factually incorrect and manifestly unjust, as Ms. Lopera was not present when the incident reportedly occurred.

88. Not having been present, Ms. Lopera lacked full knowledge of what transpired and could not have intervened in the situation in any event.

89. Moreover, Ms. Montfleury had expressly denied Ms. Lopera the authority to address personnel issues concerning temporary workers.

90. Ms. Montfleury had specifically told Ms. Lopera that she (Ms. Montfleury) would address any issues concerning the performance of temporary employees.

91. Ms. Montfleury had instructed Ms. Lopera that if a temporary worker demonstrated performance problems, Ms. Lopera should send the employee home and that Ms. Montfleury would address the situation when she herself was at work.

92. Second, the warning alleged that Ms. Lopera had authorized overtime without authorization from a director. This, again, was wholly inaccurate. Ms. Lopera, having sent home

the temporary worker accused of belligerent behavior (in accordance with Ms. Montfluery's instructions), had no choice but to request a temporary worker from a staffing agency to fill in because the kitchen was short staffed.

93. Ms. Lopera understood that no overtime would be incurred because the week for overtime purposes began on a Sunday (and it was Sunday) and because the worker was an employee of an agency, not of the Company.

94. Further, the warning claimed that Ms. Lopera had previously been counseled regarding overtime scheduling.

95. Again, this was wholly false. Ms. Montfleury, not Ms. Lopera, had been counseled on this issue.

96. Ms. Lopera did not even have the authority to call employees to come in for overtime hours (nor, as noted above, did she believe she was doing so).

97. On August 7, 2018, the day after Ms. Lopera returned from medical leave, she was contacted by Compass's Regional Human Resources Manager, Jamie Robidoux ("Mr. Robidoux").

98. Mr. Robidoux informed Ms. Lopera that Compass/Morrison was putting her on administrative leave for the pendency of its investigation into the substance of her performance warning.

99. Compass/Morrison's unnecessarily drastic decision to suspend Ms. Lopera did not comport with its progressive discipline policy, since Ms. Lopera had not received prior verbal counseling on the subjects of the warning.

100. On or about August 13, 2018, Compass/Morrison informed Ms. Lopera without explanation that she had been "benched" and would no longer hold her position at Morrison.

101. On information and belief, Ms. Montfleury influenced this decision based on unlawful motives.

102. Compass/Morrison further informed Ms. Lopera that she had thirty (30) days to apply for other positions within Compass.

103. On information and belief, this representation was not made in good faith, as Ms. Lopera was only offered the opportunity to pursue non-management (e.g., wait staff) positions within Compass.

104. Even for these non-management positions, Ms. Lopera was not granted any interviews, despite her many years of service to Compass and stellar performance record.

105. Thus, Compass/Morrison actually and/or constructively terminated Ms. Lopera's employment.

106. Following Ms. Lopera's termination from employment, Compass/Morrison failed to pay Ms. Lopera's earned salary for several weeks.

107. Further, Compass, Morrison and Flik also failed to pay Ms. Lopera for the entirety of the PTO that she had earned, including without limitation, prior to her transfer to Morrison.

### PLAINTIFF'S CLAIMS

### COUNT I – DISCRIMINATION ON THE BASIS OF RACE/COLOR, ANCESTRY, AND NATIONAL ORIGIN (COMPASS GROUP USA, INC. AND MORRISON MANAGEMENT SPECIALISTS, INC.)

108. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-107 as if fully set forth herein.

109. After her employment was terminated, Plaintiff filed a timely complaint against Compass, Morrison Healthcare, and Ms. Montfleury with the Massachusetts Commission Against Discrimination ("MCAD").

110. Plaintiff subsequently withdrew her complaint from the MCAD and requested permission to file suit.

111. Thereafter, the MCAD granted Plaintiff's requested and authorized her to bring a private right of action.

112. As set forth herein, Compass and Morrison discriminated against Plaintiff on the basis of her race/color, ancestry and/or national origin, including, without limitation, by subjecting her to disparate terms and conditions of employment and terminating her employment, all in violation G.L. c. 151B, § 4(1).

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

### COUNT II – DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION (COMPASS GROUP USA, INC. AND MORRISON MANAGEMENT SPECIALISTS, INC.)

113. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-112 as if fully set forth herein.

114. As set forth herein, Compass discriminated against Plaintiff on the basis of her sexual orientation, including, without limitation, by subjecting her to disparate terms and conditions of employment and terminating her employment, all in violation G.L. c. 151B, § 4(1).

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

### COUNT III – COERCION, INTIMIDATION, THREATS AND INTERFERENCE
### (MARIE MONTFLEURY)

115. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-114 as if fully set forth herein.

116. Through the actions set forth herein, Ms. Montfleury coerced, intimidated, threatened and/or interfered with Plaintiff's exercise and enjoyment of rights granted under G.L. c. 151B, because of her race/color, national origin, ancestry, and/or sexual orientation, which violated G.L. c. 151B, § 4(5).

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

### COUNT IV – FAMILY MEDICAL LEAVE ACT INTERFERENCE
### (COMPASS GROUP USA, INC. AND
### MORRISON MANAGEMENT SPECIALISTS, INC.)

117. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-116 as if fully set forth herein.

118. Compass and Morrison are employers under, and subject to, the Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA").

119. Plaintiff was at all relevant times an eligible employee under the FMLA, 29 U.S.C. § 2611(2).

120. Plaintiff's vertigo and/or related symptoms temporarily rendered her unable to work.

121. Plaintiff qualified for and was entitled to FMLA benefits, including the benefits of medical leave, the right to return to her position after leave, and the right not to experience retaliation for having sought and taken leave.

122. Through the actions set forth in this Complaint, Compass and Morrison unlawfully interfered with Plaintiff's FMLA rights, including without limitation by subjecting her to discipline in whole or in part because of her leave, by declining to reinstate her to the position that she had held before her leave, and/or by terminating her employment.

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

## COUNT V – FAMILY MEDICAL LEAVE ACT RETALIATION
## (COMPASS GROUP USA, INC. AND
## MORRISON MANAGEMENT SPECIALISTS, INC.)

123. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-122 as if fully set forth herein.

124. Through the actions set forth in this Complaint, Compass and Morrison unlawfully retaliated against Ms. Lopera for her exercise of FMLA rights, including without limitation by subjecting her to discipline and/or terminating her employment in whole or in part because of her need for and/or taking of FMLA leave.

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

## COUNT VI – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (COMPASS GROUP USA, INC. AND MORRISON MANAGEMENT SPECIALISTS, INC.)

125.  Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-124 as if fully set forth herein.

126.  As set forth in this Complaint, Plaintiff observed unsanitary and otherwise unsafe conditions in the BMC kitchen.

127.  Without limitation, Plaintiff reasonably believed that these conditions increased the risk of cross-contamination from allergens or other substances that could be harmful to the public generally and/or to patients specifically.

128.  Without limitation, Plaintiff also reasonably believed that these conditions increased the likelihood of foodborne illnesses, which, again, could compromise the public health generally and/or the health of vulnerable patients specifically.

129.  As set forth in this Complaint, Plaintiff also observed that kitchen employees were assigned to tasks for which they were not properly trained, which further posed a risk of cross-contamination, the spread of foodborne illnesses, and/or the disregard of physicians' orders for patients with medical dietary needs.

130.  On information and belief, the conditions that Plaintiff observed were in violation of, without limitation, standards and regulations governing food safety generally and hospital food safety and quality specifically.

131.  Defendants' disregard of food- and patient-safety standards and regulations posed a risk to the public health and safety.

132. As set forth in this Complaint, Plaintiff made various complaints to Compass/Morrison concerning the aforementioned food- and patient-safety conditions and training at the BMC kitchen.

133. Compass and Morrison failed to conduct a reasonable investigation into Plaintiff's complaints.

134. Instead, Compass and Morrison lashed out at Ms. Lopera and subjected her to discipline and, ultimately, termination from her employment, in whole or in part because of her complaints.

135. Compass and Morrison wrongfully terminated Ms. Lopera in violation of public policy.

WHEREFORE Plaintiff demands compensatory damages (including, without limitation, back pay, front pay, lost benefits, and compensation for emotional distress), punitive damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

**COUNT VII – FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207
(COMPASS GROUP USA, INC. AND
MORRISON MANAGEMENT SPECIALISTS, INC.)**

136. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-135 as if fully set forth herein.

137. Compass and Morrison are both "enterprises" as defined by Section 3(r)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(r)(1), and are enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that their employees are engaged in interstate

commerce and its annual gross volume of sales made or business done exceeds $500,000, exclusive of taxes.

138.   During most, if not all, of the time that Plaintiff worked for Compass and Morrison at the BMC ("the FLSA Violation Period"), Plaintiff worked approximately forty-eight (48) hours per week.

139.   During the FLSA Violation Period, Compass and Morrison designated Plaintiff as a "manager's assistant" while paying her a weekly salary.

140.   During the FLSA Violation Period, Plaintiff received no additional compensation for hours worked in excess of forty (40) per week.

141.   During the FLSA Violation Period, Compass and Morrison failed to pay Plaintiff one-and-one-half times her regular rate of pay for hours worked in excess of forty (40) per week.

142.   During the FLSA Violation Period, Compass and Morrison apparently classified Plaintiff as exempt from the overtime requirements of the FLSA, 29 U.S.C. § 207, pursuant to the so-called "executive exception" thereto, as set forth in 29 U.S.C. § 213.

143.   However, Plaintiff's primary duty was not management; rather, Plaintiff expended more than half of her time engaged in manual tasks, including without limitation, cleaning, preparing food, and serving food.

144.   Further, Plaintiff did not have the authority to hire and fire employees, nor were her suggestions and recommendations as to the hiring, firing, advancement, promotion or other changes of status given particular weight.

145.   Therefore, Plaintiff was not properly classified as "exempt" from the FLSA's overtime mandate and was entitled to 1.5 times her regular rate for all hours in excess of forty (40) per week.

146. Compass's and Morrison's failure to pay Plaintiff overtime compensation for hours worked in excess of forty (40) per week violated the FLSA, 29 U.S.C. § 207 (a).

WHEREFORE Plaintiff demands unpaid overtime compensation, liquidated damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

### COUNT VIII – VIOLATION OF THE WAGE ACT, M.G.L. c. 149, § 148 (COMPASS GROUP USA, INC., MORRISON MANAGEMENT SPECIALISTS, INC. AND FLIK INTERNATIONAL CORP.)

147. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1-146 as if fully set forth herein.

148. At all relevant times, Compass was an "employer" of Plaintiff within the meaning of the Massachusetts Wage Act, G.L. c. 149, § 148 ("Wage Act").

149. Further, at various times relevant to this Complaint, Flik and Morrison were "employers" of Plaintiff within the meaning of the Wage Act.

150. During the FLSA Violation Period, Compass and Morrison failed to pay all wages due to Plaintiff, including without limitation overtime compensation required under the FLSA, 29 U.S.C. § 207, accrued PTO and/or the entirety of Plaintiff's earned salary within the time set forth in the Wage Act.

151. Further, Flik and Compass failed to compensate Ms. Lopera for her accrued PTO upon her transfer to Morrison or thereafter.

152. Prior to the filing of this Amended Complaint, Plaintiff filed complaints against Compass, Morrison and Flik with the Fair Labor Division of the Massachusetts Attorney General's Office concerning these violations of the Wage Act.

153. The Attorney General thereafter authorized Plaintiff to file suit on Plaintiff's Wage Act claims.

WHEREFORE, pursuant to M.G.L. c. 149, § 150, Plaintiff demands unpaid wages, treble damages, attorneys' fees, costs, statutory interest, and all other relief that this Court deems meet and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully Submitted,
LAURA E. LOPERA
By Her Attorneys,

Dated:  March 4, 2021                    /s/ Michaela C. May
Eric R. LeBlanc (BBO# 666786)
eleblanc@bennettandbelfort.com
Michaela C. May (BBO# 676834)
mmay@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

 /s/ Michaela C. May
Michaela C. May