**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Laura E. Lopera, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Civil Action No. |
| v. | )   21-10355-NMG |
| | ) |
| Compass Group USA, Inc., et al., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**Gorton, J.**

This action arises out of the termination of Laura Lopera ("Lopera" or "the plaintiff") from her employment as Patient Services Manager at Compass Group USA, Inc. ("Compass"). That company provides food services to entities such as hospitals and schools.[1] Lopera alleges, <u>inter alia</u>, that the defendants interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 <u>et seq</u>. ("the FMLA") and, after she exercised those rights, terminated her in retaliation. In addition, she claims that Compass failed to compensate her for overtime, in violation of the Fair Labor Standards Act, 29

---

[1] At the relevant time, plaintiff was employed by Morrison Management Specialists, Inc. ("Morrison"), a wholly-owned subsidiary of Compass and its co-defendant in this action hereinafter usually referred to collectively as "Compass" or "the defendants".

U.S.C. § 207 ("the FLSA"), and the Massachusetts Wage Act, M.G.L. c. 149, § 148 ("the Wage Act").  Compass denies all of plaintiff's substantive claims.

Pending before the Court is the defendants' motion for summary judgment with respect to counts IV and V ("the FMLA claims"), count VII ("the FLSA claim") and part of count VIII, ("the Wage Act claim").  For the reasons set forth below, that motion will be allowed, in part, and denied, in part.

## I.  **Background**

The facts of this case are not, for the most part, in dispute.  Laura Lopera was first hired by Compass in 2009.  In 2017, she applied for and was accepted into Compass's management training program, and in early 2018, defendants hired her to work as a Patient Services Manager for their client, the Boston Medical Center Corp. ("BMC"), a hospital in Boston, Massachusetts.  In that role, Lopera was paid bi-weekly just over $2,000.  Her responsibilities included supervision of the preparation and delivery of meals to BMC patients who, at any given time, numbered approximately 200.  The Patient Services Manager position was time consuming and frequently required Lopera to work more than 40 hours per week.  During the relevant period, her usual weekly schedule consisted of three shifts of 13 to 14 hours and a half shift of approximately 7 hours.

**A. The first leave**

On July 17, 2018, Lopera felt unwell and left work to see her doctor.  She subsequently called out of work for her scheduled shifts on July 18 and 20, 2018, due to vertigo.  She returned to work three days later but, upon the recommendation of her doctor, she worked no more than 12 hours per day.

**B. The second leave**

On July 31, 2018, Lopera again left work early due to a medical issue.  Earlier that day, she had met with Marie Monfleury, another Patient Services Manager and co-defendant and Katrina Parsons, Associate Director of Patient Food Services and Lopera's supervisor, concerning a temporary employee's inappropriate behavior several days earlier.[2]  Lopera was given a "counseling report" that detailed what her superiors, Parsons and Mia Amado, Director of the Food and Nutrition Department at BMC, believed were shortcomings in plaintiff's management of that situation.

The parties dispute the tenor of the July 31 meeting. Parsons and Monfleury contend that Lopera yelled at them and acted inappropriately.  Amado, who did not attend the meeting, says that Lopera later came to her office while she was on a

---

[2] Although Monfleury (not "Montfleury", as in the complaint) is a defendant, plaintiff does not seek recovery against her with respect to any of the claims at issue here.

-3-

call and yelled at her, too.  Lopera denies yelling or behaving
inappropriately during any interaction with Parsons, Monfleury
or Amado.

### C. Lopera's termination

Lopera returned to work without restriction on August 6,
2018.  On that day, Amado and Charles Green, another Associate
Director of Patient Food Services, met with Lopera to deliver
the same counseling report that had been the subject of the
contested July 31 meeting, as well as a personal improvement
plan ("the PIP") drafted by Parsons.  Lopera's behavior in the
August 6, 2018, meeting is also disputed.  Amado contends that
Lopera used profanity repeatedly and stated that she would not
feed patients if she was short staffed, while Lopera denies that
she said anything of the sort.  The parties do not dispute,
however, that Lopera refused to sign the counseling report.

On August 8, 2018, Lopera met with Parsons and Jamie
Robidoux, a Regional Director.  Again, the parties disagree
about what occurred.  Defendants aver that Lopera admitted to
Robidoux that she had said she would not serve patients if short
staffed.  Lopera maintains that she never said that she would
not serve patients.  Undisputed is the fact that after the
meeting, Robidoux removed Lopera from the BMC account.  Lopera
was placed on paid administrative leave for 30 days and offered
an opportunity to search for jobs in other divisions of the

-4-

defendant companies.  After the 30-day leave period expired and
Lopera had not secured another position, her employment was
terminated.

On January 10, 2020, Lopera filed a complaint in
Massachusetts Superior Court for Suffolk County, naming Compass,
Morrison, Monfleury, and Flik International Corporation, another
wholly-owned Compass subsidiary, as defendants.  They removed
the action to this Court in February, 2020, and after discovery,
Compass and Morrison moved for summary judgment, in part.
Lopera opposes that motion.

## II.  <u>Motion for Summary Judgment</u>

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d
816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby,
Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material

-5-

fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. The Family and Medical Leave Act Claims

The FMLA affords employees certain substantive rights, including the right to 12 weeks of leave for serious personal or family health conditions during any 12-month period. 28 U.S.C. § 2612, see Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014).  In addition to enumerating those rights, the statute describes two ways in which they may be violated: 1) through an employer's interference with an employee's protected conduct and 2) in retaliation for it. See Favreau v. Liberty Mut., Inc., 451 F. Supp. 3d 150 (D. Mass.

-6-

2020).  While there is not always a "clear demarcation" between interference and retaliation, here Lopera alleges that Compass violated the FMLA in both ways. <u>Colburn</u> v. <u>Parker Hannifin/Nichols Portland Div.</u>, 429 F.3d 325, 330 (1st Cir. 2005).

With respect to a claim of interference in violation of the FMLA, a plaintiff must first show that her employer denied her FMLA benefits to which she was entitled. 29 U.S.C. § 2615(a)(1), <u>see</u> <u>Carrero-Ojeda</u>, 755 F.3d at 722 n.8.  If an employee can show that a benefit was denied, she must then demonstrate that the denial resulted in prejudice. <u>See</u> <u>Favreau</u>, 451 F. Supp. 3d at 166 (citing <u>Dube</u> v. <u>J.P. Morgan Investor Servs.</u>, 201 Fed. App'x 786, 788 (1st Cir. 2006)).  An employee is prejudiced if, for example, she did not receive all of the leave to which she was statutorily entitled, <u>see</u> <u>Ragsdale</u> v. <u>Wolverine World Wide, Inc.</u>, 535 U.S. 81, 88 (2002), or if she would have structured her leave differently had she received timely notice of her rights under the FMLA, <u>see</u> <u>Dube</u>, 201 Fed. App'x at 788.

To state a retaliation claim under the FMLA where direct evidence of retaliation is lacking, a plaintiff must first make a <u>prima</u> <u>facie</u> showing that 1) she availed herself of a right protected by the FMLA, 2) she was adversely affected by a decision of her employer, and 3) there is a causal connection between her protected activity and the adverse employment

-7-

action.  See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161
(1st Cir. 1998) (applying the McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973) standard to the FMLA context).   The burden
then shifts to the defendant to articulate a legitimate, non-
retaliatory reason for the adverse action.   Id.   Finally, the
plaintiff is tasked with demonstrating that there is sufficient
evidence for a reasonable juror to find that the stated reason
is a pretext for retaliation. Id.

### i.   Interference

Lopera alleges three instances of purported interference
with the exercise of her rights under the FMLA, the defendants'
failure: 1) to notify her of her rights in a timely fashion
under the statute, 2) to treat her first leave as protected
under the FMLA and 3) to reinstate her after her second leave.

First, plaintiff contends that defendants did not notify
her that her leave was FMLA-eligible until at least July 31,
2018, two weeks after the beginning of her leave and well beyond
the deadline of five business days imposed by regulation. See 29
C.F.R. 825.300(b)(1).  Defendants do not dispute that sequence
of events (but contest when their duty to issue notice first
arose) and submit that plaintiff's contentions are immaterial
because she has not demonstrated any resulting prejudice.  The
Court agrees.  Although plaintiff contends that defendants'
failure to notify caused her to return to work while she was

-8-

unwell, there is no evidence in support of that proposition beyond speculation and it is therefore insufficient to forestall summary judgment. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (holding unsupported speculation does not defeat summary judgment).

Second, plaintiff argues that defendants' failure to designate her first leave as a FMLA-protected absence interfered with her statutory rights.  Specifically, she contends that she was subject to "backlash, . . . derision and distrust" from management concerning her absence which she would not have undergone if the leave had been so designated.  How those allegations translate into prejudicial interference is unclear, and plaintiff offers little elucidation.  In any event, Lopera cannot allege that any demonstrated animus of her co-workers interfered with her ability to take leave because her second period of FMLA leave was approved, and, at most, the animus contributed to her termination which is more appropriately analyzed under the retaliation claim. See Colburn, 429 F.3d at 330-331 (explaining relationship between interference and retaliation under the FMLA).

Likewise, the third instance of alleged interference is properly classified as retaliation, and the Court considers it as such. Id.  The difference is not merely semantic because, as the First Circuit has explained,

> whether a claim is characterized as "interference" or [as retaliation], its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.

Id. at 331-32.

While plaintiff argues that the events following her leave constituted interference with her exercise of her FMLA rights, the gravamen of her claim is that she was removed from her position shortly after her return from FMLA leave.  She does not allege that in the brief period between her return and her termination, she was deprived of seniority, pay or any other benefit or responsibility she previously held, or that she was given any indication that she would be so deprived. See Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (holding that upon an employee's return, the employer must reinstate her to the same or an equivalent position and without loss of seniority).  Because plaintiff's allegations substantively pertain to her removal, not her reinstatement, the Court treats them as part and parcel of her retaliation claim, to which it now turns.

### ii.  Retaliation

Lopera alleges that defendant terminated her in retaliation for taking leave under the FMLA.  In that regard, Lopera presents the "typical . . . case" of FMLA retaliation, where

employee subject to an adverse employment action claims "that
the taking of the leave was the cause of the adverse decision."
McArdle v. Town of Dracut/Dracut Pub. Sch., 732 F.3d 29, 35 (1st
Cir. 2013).  As explained above, the Court analyzes Lopera's
retaliation claim with a modified version of the McDonnell
Douglas burden-shifting framework.

Lopera bears the initial burden of making a prima facie
showing of retaliation and easily discharges it with respect to
the first two elements.  In taking medical leave for a serious
health condition, here vertigo, Lopera availed herself of a
right protected by the FMLA. See 29 U.S.C. § 2612(d)(2)(B).
Thereafter, she was adversely affected by the decision of her
employer to terminate her. Hodgens, 144 F.3d at 161.  With
respect to the third element, causation, close temporal
proximity between an exercise of FMLA rights and termination is
"strongly suggestive" of retaliation, Oliver v. Digital
Equipment Corp., 846 F.2d 103, 110 (1st Cir. 1988), and may, at
least in some instances, clear the "low bar" of a prima facie
showing. Louis v. Bear Hill Nursing Ctr., Inc., No. 11-11540,
2014 U.S. Dist. LEXIS 139419 (D. Mass. Aug. 25, 2014).  Here,
Lopera's removal on the day she returned from leave satisfies
the prima facie standard with respect to the third element. See
Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)

-11-

(explaining that temporal proximity must be "very close" to establish prima facie causality).

The defendants likewise satisfy their intervening burden to articulate a legitimate, non-discriminatory reason for Lopera's termination without difficulty.  Lopera's alleged repeated use of belligerent language, performance issues and refusal to feed patients if short staffed are, if proven, a sufficient basis for her termination.

Finally, Lopera bears the ultimate burden to show that defendants' stated reason for her termination was a pretext for discrimination.  Evidence of pretext may include

> weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffer, the close temporal proximity between the protected conduct and the adverse action, or the sequence of events leading up to the adverse action.

Fournier v. Massachusetts, No. 20-21234, 2021 U.S. App. LEXIS 27676 at *10 (1st Cir. Sep. 15, 2021) (internal punctuation omitted) (citing Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 33 (1st Cir. 2012).  Where an employer's motive or intent is at issue, courts should be "particularly cautious" in granting an employer's motion for summary judgment. Kelley v. Corr. Med. Servs., 2013 U.S. App. LEXIS 2588 (1st Cir. Feb. 6, 2013).  Nevertheless, a plaintiff must offer some "minimally sufficient" evidence of both pretext and

discriminatory intent. Thiedon v. Harvard Univ., 948 F.3d 477, 497 (1st Cir. 2020).

If a superior lacks knowledge of protected conduct, he or she cannot possess motive to retaliate. Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015).  To maintain a retaliation claim, it is necessary that the individual who performed the purportedly retaliatory act either knew about the protected activity or, alternatively, relied on information "manipulated by another employee who harbors illegitimate animus." Id.  The latter is known as the "cat's paw" theory. Id., see Thiedon, 948 F.3d at 507.

Here, Robidoux removed Lopera from her position and Lopera has adduced no evidence that Robidoux was aware that she took FMLA leave.  Consequently, Lopera must rely upon the cat's paw theory to establish that her termination was retaliatory.  In this case, that means that she must proffer evidence from which a reasonable juror could conclude that, first, the employees who knew that Lopera had taken leave, including Monfleury, Amado and Parsons, harbored animus toward her as a result and, second, that false information infected by that animus made its way to Robidoux, who acted upon it in discharging Lopera. Ameen, 777 F.3d at 70.

Lopera avoids, albeit just barely, the "swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335

-13-

F.3d 15, 19 (1st Cir. 2003).  Taking the evidence in the light
most favorable to Lopera, a jury could find that the actions of
Monfleury, Amado and Parsons were motivated by animus and that
Robidoux's decision to terminate Lopera was based, in part, on
information disseminated by those employees. See Lohnes v. Level
3 Communs., 272 F.3d 49, 53 (1st Cir. 2001) (explaining that the
district court must take the facts in the light most favorable
to the nonmoving party and indulge it all reasonable
inferences).

Lopera has furnished, among other evidence, text messages
between her and Monfleury that a jury could conclude reflected
an intent to retaliate for Lopera's FMLA leave. For instance, in
one text message Monfleury mentions "job abandonment".  Further,
Lopera testified that Monfleury and Parsons had to fill in for
her while she was out.  While defendants disparage Lopera's
deposition testimony and affidavit as self-serving, such
testimony is sufficient to survive summary judgment if it sets
forth specific facts within the declarant's personal knowledge
which, if proven, would affect the outcome of the trial. Snell
v. Neville, 998 F.3d 474, 490 (1st Cir. 2021) (quoting
Velazquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18
(1st Cir. 2007)).  In her deposition, Lopera contends that she
was assigned to work two weekends in a row which she alleges
indicates an intent to retaliate for her sick leave.  While

-14-

Lopera's evidence of animus and pretext is far from dispositive, it suffices to establish a genuine issue of material fact with respect to retaliation.

Finally, with respect to Robidoux, information known to him about Lopera's prior statements and performance emanated from Parsons and Amado.  A jury could find such information both false and the cause of Lopera's removal, especially if it were to believe Lopera's version of the meetings on August 6 and 8, 2018.

### C. The Fair Labor Standards Act and Massachusetts Wage Act Claims

Lopera's FLSA and Wage Act claims are both predicated on her entitlement to overtime pay under the FLSA.  Because the Court concludes that she was an exempt employee under the FLSA, and thus not entitled to overtime pay, those claims will be dismissed.

### i.  The FLSA

The FLSA provides that an employer must pay an employee who works more than 40 hours in a week at a rate of one-and-a-half times the employee's base rate of pay for all hours worked in excess of 40. 29 U.S.C. § 207(a)(7).  That requirement, however, bears exceptions. See 29 U.S.C. § 213(a)(1)-(19).  Relevant here is the "bona fide executive" exemption, set forth in 29 U.S.C. § 213(a)(1) and further limned by Department of Labor regulations.

An employee is an "executive" and not entitled to overtime pay
under the FLSA if she 1) is compensated on a salary basis of at
least $684 per week, 2) has primarily managerial duties in the
company or subdivision thereof, 3) customarily and regularly
directs the work of two or more other employees and 4) has the
authority to hire and fire other employees, or has particular
weight given to her recommendations with respect to hiring,
firing, advancement, promotion or any other change of status. 29
C.F.R. 541.100(a)(1)-(4).

Here, it is undisputed that Lopera satisfies the first and
the third elements.  While she contests whether her duties were
primarily managerial and whether she had authority to make or
recommend hiring decisions, it is clear from the undisputed
facts that she did.  Plaintiff argues that, because a
significant portion of her working time was spent on non-
managerial tasks, there exists a question of fact as to whether
her primary duty was managerial.  That argument is unavailing.
Lopera's deposition testimony, her job description and the
testimony of other Patient Services Managers as to the
composition of their job duties establish beyond genuine dispute
that the role was primarily managerial.

Next, Lopera contends that she did not have authority to
make hiring or similar decisions.  While it is undisputed that
she did not actually make any such decisions while a Patient

Services Manager, the testimony of other Patient Services
Managers demonstrates that recommending hiring, firing and other
actions was within the authority of the position.  Lopera's
effort to impugn the credibility of those managers does not
raise a trialworthy issue of fact. See Moreau v. Local Union No.
246, Intern. Broth. of Firemen and Oilers, AFL-CIO, 851 F.2d
516, 519 (1st Cir. 1988) (explaining that a challenge to the
credibility of a movant's witness without any supporting
evidence does not create material issue of fact).

     Finally, Lopera contends that the defendants are barred
from interposing the FMLA exemption as a defense to her claims
because they purportedly failed to raise it as an affirmative
defense in their answer.  The Court is underwhelmed by that
argument.  In their answer, defendants asserted that plaintiff's

     claims for unpaid overtime fail because she was properly
     classified as an exempt employee under the FLSA and
     Massachusetts law.

While set in somewhat general terms, that statement is
sufficiently informative to vindicate the core purpose of Fed.
R. Civ. P. 8 of preventing surprise and unfair prejudice.
Williams v. Ashland Eng'g Co., 45 F.3d 588, 593 (1st Cir. 1995).

     Because Lopera qualifies as a "bona fide executive" under
the FLSA, she is not entitled to overtime pay and summary
judgment will issue for defendants on that claim.

-17-

### ii. The Wage Act

The Wage Act requires an employer to pay all amounts due to a terminated employee on the date of termination, including overtime pay. M.G.L. c. 149, § 148, see Lambirth v. Advanced Auto, Inc., 140 F. Supp. 3d 108, 111 (D. Mass. 2015) (holding that unpaid overtime is recoverable under the Wage Act).  Here, plaintiff's entitlement to overtime pay, and thus her Wage Act claim for that pay, require her to establish that she was not exempt from the protections of the FLSA, i.e. that she was not a bona fide executive.  Because she is qualified as an executive under the statute, she is not entitled to overtime pay and her Wage Act claim is unavailing.[3]

**ORDER**

Defendants' motion for summary judgment is, with respect to Counts IV, and VII and Count VIII (except as to allegedly accrued but unpaid time off) **ALLOWED** but is otherwise **DENIED.**
**So ordered.**


                                         /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated December 28, 2021

---

[3] The defendants do not seek, nor will they be awarded, summary judgment with respect to that portion of count VIII that concerns allegedly accrued but unpaid time off.